# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN RIVER TRANSPORTATION CO., LLC,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>GRINNELL MUTUAL REINSURANCE COMPANY,<br><br>　　　　　Defendant. | CASE NO. 3:23-cv-57<br><br>**COMPLAINT** |

　　　　Plaintiff, American River Transportation Co., LLC ("ARTCO"), by its counsel, and for its Complaint against Grinnell Mutual Reinsurance Company ("Grinnell"), states and alleges as follows:

## NATURE OF ACTION

　　　　1.　　In this action, ARTCO seeks to recover damages from Grinnell for its breach of its contractual duty to defend ARTCO in connection with an underlying bodily injury action as an additional insured under a liability policy issued to Farrell's Trucking II, Inc. ARTCO also seeks to recover damages caused by Grinnell's breach of the covenant of good faith and fair dealing based on Grinnell's failure to investigate ARTCO's request for coverage and wrongful failure to defend ARTCO.

## PARTIES

　　　　2.　　ARTCO is a limited liability company organized under the State of Delaware. ARTCO's sole member is Archer-Daniels-Midland Company, which is incorporated in the State of Delaware with its principal place of business located in Chicago, Illinois.

3. On information and belief, Grinnell is an insurance company organized under Iowa law with its principal place of business located in Grinnell, Iowa.

## JURISDICTON AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). ARTCO is a citizen of Illinois, and Grinnell is a citizen of Iowa. ARTCO seeks damages in excess of $75,000, exclusive of interest and costs.

5. Venue is proper pursuant to 28 U.S.C. § 1391 because Grinnell resides in this district and because this is the district in which a substantial part of the events or omissions giving rise to the claims herein occurred.

## FACTUAL BACKGROUND

**A.   The Carrier Agreement**

6. On or about June 2, 2022, Archer-Daniels-Midland Company ("ADM") entered into that certain Carrier Agreement (the "Carrier Agreement") with Farrell's Trucking II, Inc. ("Farrell's") to set forth Farrell's duties and responsibilities regarding the transport of ADM goods between points in the United States. A true and correct copy of the Carrier Agreement is attached hereto as **Exhibit A**.

7. Under the Carrier Agreement, Farrell's agreed that it would, using due care, pick up goods tendered by ADM as and when requested, transport the goods in a timely manner, and deliver the goods in good order and condition (the "Services"). Ex. A, ¶1.

8. Farrell's also agreed to provide the Services in a safe and prudent manner and in compliance with instructions provided by ADM. Ex. A, ¶3(a).

9. Farrell's further agreed that it was "responsible for … the employment, training, supervision and control of the drivers and any helpers … [and] for safe and lawful operation of the vehicles used in the performance of the Services and will assume all costs, expenses, and liabilities

2

incident to or arising out of furnishing … equipment, labor, fuel, supplies, and insurance." Ex. A, ¶3(c).

10. The Carrier Agreement provides that Farrell's will perform the Services as an independent contractor, and neither its employees nor agents will be deemed employees or agents of ADM. Ex. A, ¶4.

11. Farrell's also agreed to procure and maintain insurance during the term of the Carrier Agreement, including general liability insurance. The Carrier Agreement required Farrell's to specifically name "ADM Company and its subsidiaries and affiliates" as an additional insured under the general liability policy, regardless of the negligence or fault of ADM or its subsidiaries and affiliates. The insurance required under the Carrier Agreement "shall be primary to any insurance that ADM or its subsidiaries and affiliates has or may have covering the matters outlined, and shall be non-contributory as to ADM's and its subsidiaries' and affiliates' other coverage." Ex. A, ¶12.

**B.  The Pataska Claim**

12. On March 17, 2023, Stanley Pataska ("Pataska") filed a complaint against ADM subsidiary ARTCO in Clinton County, Iowa (the "Pataska Complaint") seeking damages for alleged injuries that Pataska claimed occurred at an ARTCO facility while performing Services for his employer Farrells (the "Pataska Lawsuit"). ARTCO subsequently removed the Pataska Lawsuit to U.S. District Court for the Southern District of Iowa, Eastern Division. A true and correct copy of the Pataska Complaint is attached hereto as **Exhibit B**.

13. In the Pataska Complaint, Pataska alleges that he drove a truck and flatbed trailer owned by Farrell's to ARCTO's Camanche, Iowa facility to pick up a load of aluminum blocks. Ex. B, ¶4.

14. According to Pataska, he made approximately 100 similar pickups at ARTCO as an employee of Farrell's, which involved an employee or agent of ARTCO loading the aluminum blocks onto the flatbed trailer. Pataska further alleges that he "help[ed] ARTCO forklift drivers position the aluminum blocks on the flatbed by giving verbal directions as the ARCTO forklift set the aluminum blocks onto the flatbed trailer." Ex. B, ¶¶5-6.

15. Pataska alleges that "[i]t was common practice for Farrell's Trucking employees to help ARTCO forklift drivers position aluminum blocks onto the flatbed trailers." Ex. B, ¶7.

16. According to Pataska, he arrived at the ARTCO facility on June 7, 2022 as an employee of Farrell's to pick up a load of aluminum blocks. Ex. B, ¶8.

17. Pataska alleges that, as the forklift driver was backing up and turning, the aluminum blocks on the top of the stack slid off the forklift and hit the ground, landing on Pataska's right foot. Ex. B, ¶8.

18. According to Pataska, he suffered a crush injury to his right foot and was hospitalized for 12 days. Pataska claims that he suffered a permanent injury due to this incident. Ex. B, ¶¶9-10.

19. Based on his allegations, Pataska asserted a negligence claim against ARTCO, and his wife asserted a loss of consortium claim. Ex. B, ¶¶14-22.

20. Pataska also asserted a workers' compensation claim against Farrell's. Grinnell provides Farrell's with workers' compensation coverage and was aware of Pataska's workers' compensation claim.

21. On information and belief, Farrell's failed to provide training to Pataska in connection with the Services, including necessary training to avoid close proximity to forklifts while in operation.

4

**C.     The Grinnell Policy**

22.     Grinnell issued a commercial general liability policy to Farrell's for the policy period of September 11, 2021 to September 11, 2022, Policy No. 790540 (the "Policy"). According to a certificate of insurance provided by Farrell's, the Policy provides $1,000,000 in commercial general liability coverage.

23.     To date, despite repeated requests and despite Farrell's obligation to name ADM and its subsidiaries as additional insureds, Grinnell and Farrell's have refused to provide ARTCO or ADM with a full copy of the Policy or even the relevant additional insured endorsements.

24.     On information and belief, the Policy obligates Grinnell to pay all sums that the insured becomes legally obligated to pay as damages because of bodily injury. On information and belief, Grinnell also has the right and duty to defend any insured against a suit asking for such damages.

25.     On information and belief, the Policy contains two additional insured endorsements. On information and belief, the Policy's additional insured endorsement specifically names ADM and its subsidiaries and affiliates as additional insureds and provides coverage for liability arising out of the performance of Farrell's ongoing operations to the extent that the additional insured is vicariously liable for Farrell's conduct.

26.     On information and belief, the Policy also contains a blanket additional insured endorsement, which states that the Policy's definition of an Insured is changed to include as an Additional Insured any person or organization to whom Farrell's becomes obligated to include as an Additional Insured under the Policy as a result of any written contract or written agreement Farrell's enters into prior to the occurrence that requires Farrell's to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability for bodily

injury caused, in whole or in part, by Farrell's acts or omissions or the acts or omissions of those acting on Farrell's behalf, in the performance of Farrell's operations for the Additional Insured or at their premises.

### D. ARTCO's Tender and Grinnell's Wrongful Denial

27. On March 24, 2023, ADM (on behalf of ARTCO) provided notice to Farrell's of the Pataska Lawsuit, requested that Farrell's immediately notify its insurers of the Pataska Lawsuit, and demanded that Farrell's take any steps necessary to ensure that its insurance company assumes the defense of ARTCO in the Pataska Lawsuit.

28. On May 9, 2023, Grinnell responded and denied any obligation to defend or indemnify ARTCO in connection with the Pataska Lawsuit. Grinnell's denial, however, was based solely on the terms of the Carrier Agreement, rather than the Policy. There was no indication in Grinnell's response that it ever evaluated coverage for the Pataska Lawsuit under the Policy.

29. On June 2, 2023, ADM (on behalf of ARTCO) requested that Grinnell evaluate coverage for the Pataska Lawsuit under the Policy.

30. On June 5, 2023, Grinnell again denied any obligation to defend or indemnify ARTCO in connection with the Pataska Complaint. In its June 5, 2023 letter, Grinnell did not provide any reasoning for its denial under the Policy. Instead, Grinnell again focused its analysis exclusively on the Carrier Agreement and simply claimed that "ADM does not qualify as an additional insured under Farrell's insurance policy issued by Grinnell."

31. Contrary to Grinnell's denial, ARTCO is an additional insured under the Policy and is entitled to coverage. The allegations in the Pataska Complaint show that Pataska's alleged injuries were caused, at least in part, by the acts or omissions of Farrell's or its agents. The

allegations in the Pataska Complaint could also support a claim of vicarious liability against ARTCO under applicable law.

32. Under the Carrier Agreement, Farrell's agreed to be responsible for the training of its drivers. The allegations in the Pataska Complaint show that Farrell's failed to properly train Pataska. Pataska also expressly alleges that it was "common practice" for Farrell's employees to help ARTCO forklift drivers position aluminum blocks onto flatbed trailers.

33. Taken together, Pataska's allegations show that his alleged injuries potentially were caused, at least in part, by the acts or omissions of Farrell's or its agents, or that ARTCO could be held vicariously liable for Farrell's conduct under applicable law.

## COUNT I – BREACH OF CONTRACT
**(Breach of Duty to Defend)**

34. ADM incorporates by reference paragraphs 1 through 33 as if fully set forth herein.

35. The Policy is an enforceable contract.

36. ARTCO qualifies as an additional insured under the Policy as a subsidiary of ADM.

37. Grinnell has a duty to defend ARTCO in connection with the Pataska Complaint under the Policy.

38. Grinnell breached this obligation by wrongfully denying its duty to defend the Pataska Complaint.

39. As a direct and proximate result of Grinnell's breach of its contractually owed duty to defend ARTCO in connection with the Pataska Complaint, ARTCO has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff American River Transportation Co., LLC respectfully requests that this Court enter judgment in its favor and against Grinnell, award damages in an amount to be

determined at trial, award attorneys' fees, and grant such other and further relief as this Court deems just and proper.

## COUNT II – BREACH OF CONTRACT
**(Breach of the Covenant of Good Faith and Fair Dealing)**

40. ARTCO incorporates by reference paragraphs 1 through 33 as if fully set forth herein.

41. The Policy is an enforceable contract.

42. The covenant of good faith and fair dealing is implicit and contained within all contracts, including the Policy.

43. One of the purposes of the insurance protection Grinnell promised to provide to additional insureds such as ARTCO is to provide for ARTCO's defense against bodily injury claims such as those alleged by Pataska.

44. Grinnell failed to make a reasonable investigation of the facts, including that Pataska asserted a workers' compensation claim and could not directly pursue Farrell's in the Pataska Lawsuit, and failed to evaluate coverage for ARTCO as an additional insured under the Policy.

45. Grinnell knew, or reasonably should have known, that Pataska was precluded from asserting a tort claim against Farrell's in the Pataska Lawsuit and should have construed the allegations in the Pataska Complaint in the context of the immunity provided to Farrell's under the applicable workers' compensation statute. Instead, Grinnell narrowly construed the allegations in the Pataska Complaint in contravention of applicable law.

46. There also is no indication in any of Grinnell's correspondence that it ever conducted a reasonable investigation into ARTCO's claim for coverage under the Policy. While Grinnell's correspondence sets forth a detailed analysis under the Carrier Agreement, Grinnell

only made a passing reference to an evaluation under the Policy and provided no support for its conclusion that ARTCO does not qualify as an additional insured.

47. Grinnell reviewed, or claimed to have reviewed, the Carrier Agreement during its investigation. The Carrier Agreement stated that Farrell's was obligated to name "ADM Company and its subsidiaries and affiliates" as additional insureds. Despite this express requirement, Grinnell wrongfully claimed that ARTCO was not an additional insured under the Policy.

48. As a direct and proximate result of Grinnell's breach of the covenant of good faith and fair dealing, ARTCO has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff American River Transportation Co., LLC respectfully requests that this Court enter judgment in its favor and against Grinnell, award damages in an amount to be determined at trial, award attorneys' fees, and grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

ARTCO requests a trial by jury on each of its claims.

Dated this 1st day of September, 2023.

                AMERICAN RIVER TRANSPORTATION CO., LLC, Plaintiff

By: /s/ Megan S. Wright
Megan S. Wright (AT0008713)
CLINE WILLIAMS WRIGHT
JOHNSON & OLDFATHER, L.L.P.
Sterling Ridge
12910 Pierce Street, Suite 200
Omaha, NE 68144
(402) 397-1700
mwright@clinewilliams.com